We next hear oral argument in the matter of Pedro Vazquez v. United States. Mr. Berman. Mr. Berman, I must say I've never seen a case like this before. I certainly think and hope this is a rather unusual situation. Good morning, Your Honor. Before I get started, if I could reserve two minutes for about all. Granted. I was afraid Your Honor was going to say you've never seen a case where counsel missed a pretty critical... That's exactly right. Where counsel missed a pretty critical... Right. So... I've not seen this happen before, I must say. And I spent 14 years in the district court. In any event, you are advancing by virtue of our COA here, arguments relative to the prejudice prong, I guess. The district court, if I recall, really didn't address or pass over the effective representation prong, choosing to get to prejudice. So explain a prejudice argument here, if you would please. How was Mr. Vasquez prejudiced by what occurred? So he was prejudiced in two ways, one with respect to the trial court representation and one premised on the court's opinion in Menino on the direct appeal. So let me address that a second. I would say that helps. That shows where the prejudice occurred. But I think what we're trying to get at is how did the error that was made result in actual prejudice, disadvantage the defendant, when had no error occurred, had an actual predicate offense, an active predicate offense, been cited and been included in the definition of career offender? There's no doubt that he is a career offender. There's no doubt about that. So I don't mean to be coy, but it was something I addressed in my briefs, which is it may be that on remand if the district court allows the sentencing record to be expanded to include additional information that was not part of the original record, that the district court would make a determination that he's a career offender. I've looked at the prior. And not only that the court would allow that to come forth, but that his defense counsel on remand would not have some argument as to why that offense should not be counted. I mean, I don't know that there's any real concession here by you that, oh, but of course, we're not going to put up on a defense or an argue for some reason that he's still not a career offender. I mean, I'm giving you a proverbial softball. Yeah, yeah. But the answer to that, because that could be helpful to my question. Take a swing at it. So the answer is that I've looked at the conviction that the government is now putting forward as being satisfying the predicate. It is not part of the original sentencing record. What do you mean by sentencing record? That information was not in the PSR. We all know it was not in the PSR. And I think we also know at this stage that it actually was not available on the state court records that the PSR investigator or probation officer looked at. It had to be retrieved from some other source because it had not been made part of the record previously, right? Correct. Okay. But everybody agrees on what the facts of the criminal history are now, right? Well, when your honor says what the criminal history is now, there's only criminal history if there's a sentencing proceeding where that information is presented to the court. And I think that's the gist of the work. There's nothing of record. The government says if it goes back, we're going to put this forward. But that's wonderful. But that's not something that's ever been presented to the trial. Correct. It begs the question, which is the one the parties addressed below and on appeal, which is, well, is the government going to be permitted to supplement the record? If they can't supplement the record. And that's a separate question, though, isn't it? I mean, the government was perfectly satisfied with the PSR in the first instance. But then when they found out that they may have lost one of their priors that would have gotten them to career offender status, they asked, what, about three different times, I think, for extensions that would allow them to try to find something to save the career offender enhancement. Yes, so your honor, that's a different question. But I don't think it is because that's what establishes the prejudice. Because if the government can't supplement the record, on the record that exists, the original, what I've referred to, the original sentencing record, he's not a career offender. Okay. The government can't share its burden of proving he's a career offender based on that original record. If the government allows us to supplement the record. But there's something unfair about you now saying, oh, guess what, the government can't supplement because it should have raised that issue at sentencing that, oh, there's another offense. That wasn't even relevant. It wasn't an issue. So to say they can't raise it when you go back, it's a whole different, it's a new ballgame. Because they didn't waive it. They didn't waive it. I mean, they should be foreclosed if they waived it. But I would think in a trial court's discretion you'd say, well, it's a different issue now. We now have one offense. So government, is he a career offender with one offense? I say, yes, he is because we have another offense now that the other one's been taken out. But I'm surprised that you say that's necessary in order to establish prejudice. Under Menino, don't we say, you know, if we would have sent it back on direct appeal, if it had come before us, we would have remanded. Isn't that the test for prejudice? Isn't that what you want? So that's why I broke it up into two parts. So I think the case has to go back on Menino because the gist of Menino is. From your standpoint and maybe from ours, isn't that the easiest way for you to get what you want from your client? The answer is yes. But what I want from my client is not just a remand. Because I think Menino required the remand because there's a reasonable probability that there would have been a remand. You want us to say that the additional offense can't come in. Correct. On what basis? On what basis? So on the basis. It's not a second bite at the apple. It's a first bite at a different apple. In fact, the Supreme Court referred to that as a windfall. There's a difference between whether or not there's a reasonable probability of a different result, i.e., prejudice, and whether or not we engage in something which results in a windfall, as the Supreme Court said. Why wouldn't that be a windfall? So it's not a windfall, and it is a second bite at the apple under Dickler and the cases. It's not just Dickler, but quite a few of the circuits follow the same approach. Why shouldn't we just let the district court make that determination in the first instance? Well, that's why I say it. Because you can lose. No, no. The district court already has made that determination. That was the issue that the district court addressed below. So it's been fully briefed below. It's been briefed by the parties here. When did the district court resolve that question? This issue was not before the district court. The district court didn't know about it. The issue of a second bite at the apple, whether it is or is not a second bite at the apple. In this case. No, I think Mr. Romano will correct me, but I do think that that is the issue. It was addressed by the district court. And the reason. Looking at using Fretwell and saying, well, of course, he really wasn't prejudiced. I'm sorry. I said because the district court used Fretwell and said he really wasn't prejudiced. Didn't Judge Hillman say that? The judge, he did. That was part of his decision. But he also focused on the prejudice issue. And I think it's quoted in his opinion, which he says the parties agree that the issue of prejudice comes down to whether the government will be permitted to introduce that or be sentencing this new information. And the reason it's a second bite at the apple, to address Judge Rendell's concerns, is that it's not an issue where the government was not aware of its burden of proof. The government is aware when it seeks to have a defendant sentenced as a career offender, that it bears the burden of proving the prior prejudice. They thought it was a predicate offense. They thought they satisfied their burden. There was no objection to it. Had there been an objection, my guess is they would have dug and come up with another offense. So that is the exact type of process that Dickler and the other cases that prohibit the second bite at the apple are looking to prevent, which is the government is not permitted to say, well, in this case it deals with career offenders, say, well, we've got these two. We think those are sufficient. And if it turns out on appeal it's not sufficient, we'll come back and we'll have a second chance to prove it by introducing additional information. That would have been the case if it had been objected to. Right. If the second offense had been objected to and the judge made a determination that, no, it's okay, but government probably should have come forward and said, oh, but if this one isn't okay, we have an alternative. That's your classic, they should have done something. This is not that. Well, query, is there anything classic about this? And this question really is more relevant to the deficient performance problem, which we don't have before us. But what strikes me as especially odd about this is the fact that the court and the parties are dealing with information that the parties have not had any role in accumulating. That is, the investigation is done by an employee of the court, by a probation officer, by a member of the probation office, and each side has an opportunity to review the PSR, of course, and to interpose objections to the PSR, none of which I believe was done here in the first instance, was it? I mean, there were no objections raised with respect to the criminal record itself. Not with respect to the criminal record, no. Right. There were other objections. And one thing I've never seen before, because I've never seen an instance like this, is a question of who had a duty to do anything further. So let me address that based on my experience. Public defenders have investigators, and prosecutors have, P.A. would say, huge resources available to investigate matters like this. So the way you've described it is only how the process works in part. So the probation office is an arm of the court. It provides the investigation for the benefit of the court. But it's the government's burden, and the case law is clear, it's the government's burden to prove an enhancement by a preponderance of the evidence. And they really seem to want this enhancement. So now they do. But so to the extent, just like any other enhancement the government wants, the government bears the burden of coming forward with the evidence to prove it. But do they have to come forward with what would be basically irrelevant information at that point? Because there were already two offenses that were agreed to satisfy. So are they supposed to go out and say, and oh, by the way, just in case we have some problem here, here's something. But the judges say, I don't need that. It's irrelevant. And the answer is, they did have the obligation, and it's not irrelevant, because the reality is that mistakes are made and parties have won, particularly the government. The problem with that is, though, let's assume that this is the career offender and all career offenders, and he has a rations when he holds it up, falls down and hits the ground, and it all puts him in his fences. Does that mean the district court has to sit in there and require the prosecution to bring out 45 qualifying predicates because you want to make sure you've got two good ones? So the answer is, he's not a career offender to end all career offenders. And the district court is. I'm going to say this, guys. I used my hypothetical. Oh, sorry. I thought you were talking to Mr. Vasquez. So in the case of a career hypothetical, the hypothetical career offender, who is maybe the worst career offender of all times, and he's got a rap sheet, such as I described. And let's forget 40. There are 75 planning offenses on there. You're saying, well, the district court has really got to sit there and let the prosecutor go through with the details of every one of those prior offenses because you never know if some of them are going to get knocked out. So the big belts and suspenders, sure. You make sure the record is protected. All this stuff comes in. No district court is going to allow that. So what I'm saying is not that the district court has to sit there. What I'm saying is that the government has the obligation to present the evidence. It decides. It wants to present in order to ensure that it obtains the sentence. It wants to present the evidence. There was no objection. So why should they run around and bring in other stuff that at the point was really irrelevant because there was no objection? Because that is what Dickler and the other cases around the circuit required. It gives them one shot at the apple. And it's premised on Supreme Court's decision. I think it works. I can't remember. Well, Dickler actually talks about the discretion of the district court. It talks about the discretion in the context of an exception, that if there's a reasonable basis for the government having not presented all of the evidence in the first instance. Exactly. And that's something which is addressed in the briefs. But the underlying premises is that Judge McKee's hypothetical. The answer is essentially, yes, if the government wants to have a defendant sentenced as a career offender, it gets one shot at it absent an application of an exception. And that is the correct approach because the government knows this is not a situation where there was surprise. And in my reply brief, I think in particular I referred to cases at that point where the government was surprised by the court's decision on appeal. So it had no reason to know that it would be required to present a certain type of evidence. But that's not this case. In this case, the government was seeking a career offender of status. It knew it needed to present sufficient evidence to obtain it, and therefore there's no reason for it to receive a second chance. And I bet it's presented more clearly in the briefs. But that is why it is a second fight. We'll have you back in a moment. Thank you. Thank you. Mr. Romano. Why is this not a situation where under Menino we should just ultimately send it back to the district court? Well, I don't think a remand is necessary here. That's not the question. Menino is a little bit different. I think you could distinguish Menino on a couple of grounds. Menino, remember, first of all, the issue was raised at sentencing. So you would be looking at a preserved claim on appeal. Here, and I think you pointed out, Judge McKee, had it been raised at sentencing, the government would have looked and would have found this other predicate, and he still would have been a career offender. We don't know that. That's an inevitable discovery, Margaret. Inevitable discovery, we look at the historical facts. What happened? Here we know what happened. He raised it. We found it. It's exactly what would have happened at sentencing. It's exactly what would have happened on appeal. And that's the Menino point. Here it wasn't raised at sentencing. Had he appealed, it would have been a plain error appeal. The government could have showed up. Menino's not conceding that there's a new offense. He's, in fact, endowed a predicate offense, though, is he? No, that's already been decided. And, Judge Rendell, that has been presented to Judge Hillman. Judge Hillman looked at it. Judge Hillman said, yes, this is a career offender predicate. There's no prejudice here. The defendant conceded below, page 260. It was the only Fretwell win-fall situation, according to you. The lack of Fretwell win-fall. Oh, I think we're definitely in that situation, yes. But, again, let me just go back to Menino for a second. This would have been a plain error appeal. The government could have showed up with that piece of paper on appeal. It's exactly what happened in Rimoy, which Your Honor was on that panel. And this court said, yes, we could look at that document. It's straightforward. This is a career offender predicate. There's no reason to send it back. It would be completely pointless. So if this was appealed, plain error appeal, it never would have went back. So I think that is the first distinguishing factor with Menino. Second one is, in Menino, you didn't have to look at Lockhart v. Fretwell because this wasn't a Fretwell situation. Here it is. He was a career offender at sentencing. He's a career offender now. Well, both Fretwell and Nix had to do with something as a matter of law. This is you're bringing in new information that was never presented to the court. This is a little bit different. And, you know, it's easy for Judge Hellman to say, oh, yes, fine. But who knows, when it goes back, defense counsel may have some basis as to why this is not presented to the sentencing court. And the sentencing court may say, you know what, you're right. Who knows? It's a different situation. I don't think it is, Your Honor. First of all, he conceded the law. If you look at page 861 of the appendix, he says, the record conclusively shows that the overriding factor that precluded the government from discovering that the 1995 drug conviction qualified as a career offender predicate. He says that multiple times. Everyone agrees this is a career offender predicate. The violation of probation swept in. Everyone agrees. You're saying that was Judge Hellman. No, that was the defendant. That was the defendant. I think it says reply brief. The only issue was whether we would have found this. That's the only thing that's really open to debate. Would we have found this or not? And I suggest that the historical evidence suggests that we would have. Well, probation, you know, comparing to PSR, they didn't find it. Well, Your Honor, that gets to your other point about the Second Violent Death. There was no reason to look for it. We can't look for every single, you know, predicate. Essentially what he's arguing for is that we should bring in evidence of everything, whether undisputed or not. What does your office do in preparation for sentencing and after receipt of the PSR? Do you do your own independent investigation to corroborate what the probation officer has determined with respect to prior record information? Do you rely solely on what appears in the PSR? I only handle appeals, but I would imagine if somebody was to… See, that's the problem. There's always this disconnect between an appeal division and a trial division. That's right. I think that if the issue was disputed, the government would… The appellate guy is needing to get in and try some cases. What about the second offense that was in the PSR? Wasn't it pretty obvious it was not a predicate offense? Not at all. In the face of the PSR, it was clearly a predicate offense. It was. What was discovered later that made it not a… The PSR said that it was a possession with intent to distribute. That's what it said. So anyone looking at the PSR would think it counted. The only person probably in the courtroom who knew it didn't count was the defendant himself. No one else realized it. And so when he brought it up… The investigation, he waived his possession. When he brought it up, the government, I think commendably, went, searched for the information, and found out, okay, you're right, that was a possession offense. But you have another one that counts. And there's no reason for the government to… But the government didn't say it quite in that sequence, did it? And I think the government said, give me some more time to look. Then give me some more time to look. And then maybe even a third time, give me some more time to look, and you finally found what you needed. Well, Your Honor, I think you have to look at this a little bit in context. It's a 2255 proceeding. These things aren't, you know, the first thing on the list. The trial assistant… I don't think they exaggerated, actually, that quasi-chronology. The trial assistant had a very long trial at the time. He got extensions. But he explained to me this wasn't really that hard to find. He got the transcript and realized on the transcript that there was this violation. Now, unfortunately, as Judge Hillman pointed out, the state court had never docketed the judgment. So it's not like it was really anyone's mistake, except the state court didn't put the judgment on. If the judgment had been docketed, the probation department would have found it. So I just think I don't see any reason for there to be a re-enactment. Well, that was counsel really ineffective after all. Well, Your Honor, quite frankly, that hasn't been decided, and I don't… Maybe he asked his client. His client didn't own up, but he did what he had to do. Well, Your Honor, I mean, if it went back, I think that Judge Hillman would need to decide efficiency, and I think that's a really important question. Maybe he sat down with his client and probably told them. And if he did, I don't know. That's an important question. We're sloppy. But, Your Honor, I really do think that this is, and again, it's a little bit distinct on the facts of whether it's law court-professional or not, but the fact of the matter is he was a career offender, he is a career offender. He got the appropriate guideline range. He got the appropriate sentence. That's what Lockhart says. That's, quite frankly, what Strickland says. Strickland says, was the result unreliable because of a breakdown in the process? But we sent it back, and the court does say he was prejudiced. I mean, how were you harmed? Well, it's a pointless remand, Your Honor. And again, Judge Hillman, going to the Dickler point, Judge Hillman decided this. Judge Hillman said, in my discretion, I would allow you to use this if there was a re-sentencing. So that's already been decided. And Dickler says it should be for the discretion of the district court. So this has all already been decided. There's really no reason to go back. Judge Hillman has already said what he's going to do. And, again, there was no fundamental unfairness here. He was a career offender, he is a career offender, he was sentenced as a career offender. Does this Court have any of that? I just want to raise one more thing. There was a Supreme Court argument last week that does address some of these issues in a slightly different context called Beaver v. Massachusetts. I just want to bring that to the Court's attention. What issues? It has to do with raising ineffectiveness in a structural error context. But one of the things they talked about is whether you could kind of get around plain error by bringing something as an ineffectiveness claim. Just in case the opinion addresses some of these issues. And one other thing I wanted to bring to your attention, and I sent these to Mr. Berman last week. I pointed out in my brief that where an issue is undisputed in the PSR, the government, that's it. It's undisputed. There's no reason to present additional information. I had some sites in my brief, but I did want to draw your attention to Federal Rule of Criminal Procedure 32I3A, which specifically says the Court may accept any undisputed portion of the pre-sentence report as a finding of fact. And then two opinions of this Court that are pretty on point, U.S. v. Siegel, which is 477 F3rd 87, and U.S. v. Iglesias 535 F3rd 150, and the specific site there is 161 Note 6. And those have to do with cases where the defendant doesn't object to his criminal history at sentencing, and on appeal the Court says, you know, you're stuck with that, you didn't dispute it. And so the same thing happened here. The government met its burden of showing career offender because he didn't dispute that he was a career offender. He didn't contest those predicates. So if the Court doesn't have any other questions, I'd ask that you affirm. Thank you, Mr. Romano. Mr. Berman, rebuttal. Just briefly. So the government hammers this argument that it would have found it had the defendant objected. Well, the government, and this case is a good example. I never finished answering Judge Spencer. What happens is the probation department does its investigation, but the government does its own investigation. I have a career offender case now that's just pleaded out, and before it did I said to the government, well, you give me those convictions so I can make sure that they're predicate offenses, and the government faxed them right over. And this is that sort of case, too, because it's a case where there was enhanced sentencing information that was provided to the defendant even before trial. So the government had looked at his criminal history, and whether it did or it did not, it's government's obligation to prove it if they're seeking it. And this is not a situation like Mr. Romano just referenced in the cases where the defendant would say, wait, first of all, it's an ineffective assistance of counsel. So the ineffective assistance of counsel presumes that there was something counsel should have done that he didn't. In this case, investigate and object to the predicate count because the probation office would have had those records. That's their state of operating procedure. What about Mr. Romano's citing the reporting he used to cite from your brief where you basically concede that this, quote, new close quote offense is a qualifier? So, again, certainly in my reply brief I made that quite clear, which is I'm not conceding anything for purposes of this action, which is it has to go back. And Your Honor's opinion for the court of Menino makes clear that to deny that aspect of due process would in effect be sensing an absentia. But that applies in this particular case, even if it turns out that he just gets to the same exact sense and he's found to be a career offender. So I'm not conceding it. There's never been a hearing where the government presented evidence that is, again, I'm repeating myself, but establishes that he's a career offender. Judge Hogan has already ruled that this new offense is a qualifier. So the answer is that there wasn't a basis for doing it. The premise was that it wasn't objected to. And I know just from having looked at the record that, for example, if one looks at the plea colloquy for that offense, which is now the qualifier, it's a violation of probation. There's no factual basis for that violation of probation. There's a factual basis in the plea transcript for the other offenses he was sentenced to on the same date. But there actually isn't a factual basis. So I throw that out there, which is, as Judge Rendell pointed out, there may well be arguments that the attorney representing Mr. Vasquez on remand, that will come up, that will persuade the district court to reach a different result. But that process hasn't been provided. And I think Menino requires it to go back for a remand. I would ask the court that it look at this Dickler issue because, again, I'm not – I would prefer not to obtain a purdict victory for Mr. Vasquez. All right. Thank you. We understand your position, Mr. Berman. We're going to take a very brief recess at this time. Thank you very much, gentlemen. Please rise. This court stays in recess.